IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-998-06; 999-06






JEFFERY MICHAEL ST. GEORGE, Jr., Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW


FROM THE SECOND DISTRICT COURT OF APPEALS


HOOD COUNTY





 Meyers, J., delivered the opinion of the Court, in which Price,
Womack, Johnson, Keasler, Hervey, Holcomb, and Cochran, JJ., joined. 
Keller, P.J., dissented.


O P I N I O N 


 Appellant, Jeffery Michael St. George, Jr., was charged with possession of
marijuana and failure to identify as a fugitive. See Tex. Health & Safety Code Ann.
§481.121(b)(1) (Vernon Supp. 2001) & Tex. Pen. Code Ann. §38.02 (Vernon 2006). 
Appellant filed two pre-trial motions to suppress, which were denied following a hearing. 
Appellant then pleaded guilty to both charges, reserving the right to appeal the trial court's
rulings denying his motions to suppress. The court of appeals reversed the trial court's
rulings, holding that the trial court erred by denying Appellant's motions to suppress his
statements and the marijuana. St. George v. State, 197 S.W.3d 806, 825 (Tex. App.-Ft.
Worth 2006). We granted the State's petition for discretionary review to determine
whether the court of appeals erred in holding that Appellant was illegally detained when he
was questioned by the deputies once the initial reason for the traffic stop had ended. We
will affirm the court of appeals. 

Relevant Facts

 On the evening of October 21, 2002, two Hood County Sheriff's Deputies, Sonny
Frisbie and Robert Young, stopped a vehicle for having an inoperative license plate light. 
See Tex. Transp. Code Ann. §547.322 (Vernon 1995). The stop was recorded by a video
camera located in the deputies' patrol unit and a microphone worn by Deputy Young. 
Deputy Frisbie informed the driver that her license plate light was not working, while
Deputy Young checked the vehicle registration and safety inspection stickers on the
windshield of the vehicle. Deputy Frisbie then requested identification from the driver. 
The driver identified herself as Suzanne St. George and presented Deputy Frisbie with her
driver's license. Deputy Frisbie subsequently asked Appellant, the only passenger in the
vehicle, for identification. Appellant told Deputy Frisbie that he had a driver's license, but
that it was not with him. At the suppression hearing, Deputy Frisbie testified that when
prompted, Appellant initially gave the name of John Michael St. George and a date of birth
of December 16, 1975. Both deputies returned to their patrol unit to run the information
they received from Appellant and the driver. (1) The license and warrant checks for the driver
came back clear. The dispatcher reported that there was no record of a driver's license
matching the name and date of birth given by Appellant. Deputy Frisbie issued the driver a
warning citation for the inoperative license plate light approximately nine minutes into the
stop. While Deputy Frisbie was explaining the warning ticket to the driver, Deputy Young
asked Appellant if his driver's license was expired and Appellant responded that it was. 
After further inquiries, the deputies ultimately learned Appellant's true name to be Jeffrey
Michael St. George. When they ran this name, the deputies found that Appellant had
outstanding warrants for speeding and for not having insurance. He was arrested ten
minutes after the citation was issued to the driver. In the search incident to arrest, the
officers found marijuana in a pack of cigarettes in Appellant's pocket. Appellant filed a
motion to suppress the evidence, claiming that the detention, questioning, and investigation
was pursued without a warrant and without probable cause or reasonable suspicion. After a
hearing, during which the investigating deputies testified and the court viewed a videotape
of the stop, the trial court denied the motion without filing findings of fact or conclusions
of law. Appellant pled guilty to the charges and received deferred adjudication. He filed an
appeal challenging the trial court's denial of his motions to suppress evidence.

Court of Appeals

 Considering the scope test outlined in Terry v. Ohio, 392 U.S. 1 (1968), the court
of appeals reasoned that the continued detention and investigation of the passenger would
be reasonable if, during the traffic stop, officers developed reasonable suspicion that the
passenger was engaged in criminal activity. And, while officers may question a passenger
and request identification without separate reasonable suspicion of the passenger, they may
not compel the passenger to answer or imply that compliance with the request is required. 
St. George, 197 S.W.3d at 819-820. After viewing the videotape of the stop, the court
created a timeline of the events that took place. Based on Brown v. Texas, 443 U.S. 47, 52
(1979), the court of appeals reasoned that once the warning citation was issued to the
driver, the deputies should have stopped questioning Appellant because they did not have
reasonable suspicion to believe that Appellant was involved in criminal activity. St.
George, 197 S.W.3d at 820. The court disagreed with the State's contentions that the
initial misidentification and Appellant's nervousness gave the deputies reasonable suspicion
to continue questioning Appellant because the deputies did not know that the initial name
and date of birth given by Appellant was incorrect until long after the warning citation was
issued. Id. at 822. Additionally, citing our holding in Holladay v. State, 805 S.W.2d 464
(Tex. Crim. App. 1991), overruled on other grounds by Hunter v. State, 955 S.W.2d 102,
106 (Tex. Crim. App. 1997), the court stated that nervousness alone is not enough to
amount to reasonable suspicion. St. George, 197 S.W.3d at 822. The court of appeals held
that the prolonged duration of the detention was a violation of the Fourth Amendment
because the State never established articulable facts arising during the initial traffic stop to
support a reasonable suspicion to justify the deputies' continued detention and investigation
of Appellant for nearly ten additional minutes. Id. at 823. 

 The court of appeals then determined whether the evidence presented at the
suppression hearing violated the "fruits of the poisonous tree" doctrine. Because the
evidence was gained by the continued questioning, the court determined that all statements
regarding Appellant's identity, barring the first consensual identification, should have been
suppressed. (2) The court further held that the marijuana was found in the search incident to
arrest on outstanding warrants, which were discovered only after deputies obtained
Appellant's correct name and birth date by continued questioning during the prolonged
detention. As such, the court of appeals held that the marijuana should have been
suppressed as well. The court held that the trial court erred in denying Appellant's motions
to suppress and reversed the convictions. Id. at 825. 

Arguments of the Parties

 The State contends that the court of appeals erred in holding that Appellant was
illegally detained when he was questioned by deputies once the initial reason for the traffic
stop had ended. The State argues that, although the court of appeals acknowledged its
function was to give almost total deference to a trial court's determination of historical
facts, it dedicated a substantial portion of its opinion to a narration of the events during the
stop. St. George, 197 S.W.3d at 812-815. Moreover, the State argues that the court of
appeals mischaracterized the sequence of events that occurred in its narration of the stop,
leading them to incorrectly hold that the stop was a fishing expedition. The State contends
that the issuance of the driver's warning citation and the questioning of Appellant occurred
simultaneously. 

 The State points out that in Duff v. State, 546 S.W.2d 283, 286 (Tex. Crim. App.
1977), this Court determined that an officer does not need independent reasonable
suspicion to request identifying information from a passenger, as long as the officer does
not attempt to coerce a passenger's cooperation. The State further notes that this Court has
held that a passenger does not have to be overjoyed or even comfortable with the encounter
for it to be considered consensual. State v. Valasquez, 994 S.W.2d 676, 678 (Tex. Crim.
App. 1999). In this case, the State argues that, although Appellant may have been
uncomfortable with the deputies' questioning, the videotape of the stop indicates that the
entire encounter was nonetheless consensual. 

 In addition to the detention being consensual, the State argues that the continued
questioning of Appellant was reasonable because within seconds of the initial reason for
the stop being completed, the deputies had formed independent reasonable suspicion that
Appellant was committing the offense of Failure to Identify. (3) The State contends that
Appellant was in violation of subsection (b)(2) because the deputies had reasonable
suspicion to detain Appellant. Based on the deputies' experience, Appellant's behavior was
suspicious, including slouching, lack of eye contact, evasive answers, and the fact that he
gave them at least two different names and dates of birth. Therefore, it was reasonable to
suspect that Appellant was engaged in criminal activity. The State cites United States v.
Cortez, 449 U.S. 411, 422 (1981), which said that it is reasonable for officers to evaluate
evidence based on their experience. According to the State, Appellant was also in violation
of 38.02(b)(3) because he was present for the commission of the criminal offense by the
driver. 

 In addition, the State contends that United States v. Brigham, 382 F.3d 500 (5th Cir.
2004) supports the trial court's rulings in this case. (4) The State points out that in Brigham, a
nervous passenger was questioned by officers about his identity four minutes into the stop. 
The State further notes that while officers were conducting the initial reason for their
investigation, they were confirming the passenger's identity as well. In both Brigham and
in this case, deputies did not learn the passenger's true identity until after the citation was
issued. The Fifth Circuit Court of Appeals held that the officer's actions in Brigham were
within the scope of the stop because of the officer's increasing suspicion that the passenger
may be lying. Id at 509.

 Finally, the State argues that even if the detention was illegal, the discovery of
outstanding warrants attenuated the taint of the marijuana they discovered in the search
incident to arrest, so the marijuana should not be suppressed.

 Appellant contends that the court of appeals correctly held that the trial court erred
by denying his motions to suppress because his interrogation and prolonged detention as a
passenger of a vehicle subject to a routine traffic stop violated the Fourth Amendment. 
Appellant argues that his presence in the vehicle was a random event in relation to the
reason for the traffic stop, and as such, he should be regarded as a pedestrian toward whom
police have no reasonable suspicion under a Terry (5) analysis. 

 Appellant argues that the demands for his identification were non-consensual,
evidenced by the fact that he objected to the continued questioning two times and that
deputies repeatedly made it clear to him that he could not leave until his information
checked out. And, because the questioning was not consensual, deputies needed reasonable
suspicion to continue questioning Appellant after the initial reason for the stop concluded. 
Appellant points out that he asked why he was being questioned after the driver had already
been ticketed and Deputy Young responded "It's just because you're nervous." Appellant
notes that this Court held in Holladay v. State, 805 S.W.2d 464, 473 (Tex. Crim. App.
1991), that any single element, including nervousness, is not sufficient to raise reasonable
suspicion and therefore, the deputies did not have reasonable suspicion to believe that he
was committing the offense of Failure to Identify. Appellant contends that he was not in
violation of Penal Code section 38.02 (b)(2), because according to Deputy Young's
testimony at the suppression hearing, Appellant was absolutely free to go and as such,
subsection (b)(2) is inapplicable because Appellant was not detained. As far as subsection
(b)(3) is concerned, Appellant argues that he does not fall under this exception either
because according to the videotape, he did not get out of the vehicle until his arrest,
therefore he did not see the inoperative license plate lamp and was not a witness to the
traffic offense. 

 In addition, Appellant addresses the State's Brigham analogy. Appellant
distinguishes the instant case from Brigham by pointing out that Brigham involved a driver,
not a passenger. Since Brigham was the driver, his presence at the traffic stop was not
random whereas as a passenger, Appellant's presence was random. Officers have the right
to conduct an investigation of a driver following a traffic violation, but do not have
authority to investigate a passenger without reasonable suspicion.

Standard of Review

 Whether a specific search or seizure was reasonable is a mixed question of law and
fact and is conducted de novo. Kothe v. State, 152 S.W.3d 54, 62-63 (Tex. Crim. App.
2004). We review a trial court's ruling on a motion to suppress evidence under a bifurcated
standard of review. Ford v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We do
not engage in our own factual review, rather the trial judge is the sole trier of fact and judge
of credibility of the witnesses and the weight to be given to their testimony. State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Guzman v. State, 955 S.w.2d 85, 89 (Tex.
Crim. App. 1997). Trial courts are given almost complete deference in determining
historical facts. Carmouche v. State 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We
review the record to determine whether the trial court's ruling is supported by the record
and correct under some theory of law applicable to the case. Armendariz v. State, 123
S.W.3d 401, 404 (Tex. Crim. App. 2003). 

 In the case before us, the trial court did not make explicit findings of fact. Under
these circumstances, we view the evidence in the light most favorable to the trial court's
rulings and assume that the trial court made implicit findings of fact supported by the
record. Ford, 158 S.W.3d at 493. In this case, a videotape of the stop was provided to the
trial court at the suppression hearing and is included in the record. Such evidence is
particularly helpful when an issue is contested. See Carmouche v. State, 10 S.W.3d at 332
(determining that the videotape of the stop contradicted the officer's testimony during a
hearing on a motion to suppress regarding consent to search). We conduct a de novo
review of evidence when the resolution of mixed questions of law and fact do not turn on an
evaluation of credibility and demeanor. Guzman, 955 S.W.3d at 89. 

Discussion

 In Terry v. Ohio, the Supreme Court addressed investigative detentions and held that
an officer's actions must be justified at its inception and must be reasonably related in
scope to the circumstances that justified the interference in the first place. Terry, 392 U.S.
at 19-20. Although Terry did not specifically consider passengers in a vehicle subjected to
an investigative detention, the test outlined in Terry is sufficiently comprehensive to
address this issue as well. Appellant challenged the second part of this test and argued that
officers' continued questioning was not related to the justification for the stop, therefore,
without reasonable suspicion that Appellant was engaged in criminal activity, the continued
detention and investigation was illegal. 

 Absent reasonable suspicion, officers may conduct only consensual questioning of
passengers in a vehicle. See Florida v. Bostick, 501 U.S. 429, 435 (1991) (stating that
officers may not convey a message that compliance with their request is required absent
reasonable suspicion). The State claims that the misidentification by St. George, coupled
with his nervous demeanor, amounted to reasonable suspicion that Appellant was
committing the offense of Failure to Identify. However, as the court of appeals noted, the
deputies did not learn that Appellant misidentified himself until after the driver was issued a
warning citation. Therefore, giving a false name when officers did not know it was false
could not give them reasonable suspicion to investigate further, nor was the fact that the
dispatcher found no record of the first name given by Appellant sufficient to raise
suspicion of criminal activity. St. George, 197 S.W.3d at 822. And, in Holladay, 805
S.W.2d at 473, we determined that any single trait, including nervousness, is not enough to
amount to reasonable suspicion. 

 If an encounter is determined to be consensual, reasonable suspicion is unnecessary. 
Duff, 546 S.W.2d at 286. Although Deputy Young testified at the suppression hearing that
Appellant was absolutely free to go, it is clear that this encounter had become non-consensual. (6) After the citation was issued to the driver, the deputies requested Appellant's
name and date of birth multiple times and repeatedly told him that this has to be resolved
before he could leave. Several minutes after the completion of the traffic stop, the deputy
continued questioning Appellant and Appellant responded, "The problem is you're
questioning someone who is not even driving a car and just sitting here and she got her
ticket and there shouldn't be any other problem here." We agree. 

 We cannot conclude that the State has established the reasonableness of the
detention required by this Court in Kothe. 152 S.W.3d at 67 (holding that police may
briefly detain individuals for further investigation during a traffic stop as long as they can
establish the reasonableness of the detention). At the time the driver was issued the
warning citation, the deputies did not have specific articulable facts to believe that
Appellant was involved in criminal activity, thus, the questioning of Appellant regarding his
identity and checks for warrants, without separate reasonable suspicion, went beyond the
scope of the stop and unreasonably prolonged its duration. See Brown, 443 U.S. 47, 52-53
(holding that unless an officer can prove that he or she has a specific basis or belief that an
individual was involved in criminal activity, their detention will be deemed
unconstitutional). 

 We do not intend to create a bright line rule that would automatically make an
investigative detention unreasonable the moment that the initial reason for the traffic stop
ends. Because the officers failed to show reasonable suspicion in this case, it was
unreasonable for them to continue detaining Appellant long after the warning citation was
issued. 

Conclusion


 Because Appellant's continued detention was unreasonable, based on its non-consensual nature and the fact that the deputies lacked reasonable suspicion to continue
questioning Appellant once the initial reason for the traffic stop ended, we affirm the
judgment of the court of appeals.

 Meyers, J.

Delivered: October 31, 2007


Publish
1. The driver was later identified as Appellant's mother.
2. The court of appeals held that the first identification was consensual because Appellant
voluntarily answered Deputy Young's question. 
3. Texas Penal Code section 38.02 states in relevant part:

 (a) A person commits an offense if he intentionally refuses to give his name, residence address,
or date of birth to a peace officer who has lawfully arrested the person and requested the
information.

 (b) A person commits an offense if he intentionally gives a false or fictitious name, residence
address, or date of birth to a peace officer who has: 

 (1) lawfully arrested the person;

 (2) lawfully detained the person; or

 (3) requested the information from a person that the peace officer has good cause to
believe is a witness to a criminal offense.
4. The State suggests that Brigham is not binding authority in this case, but points out that this
Court has found the case instructive in other cases. See e.g. Kothe, 152 S.W.3d 54, 65 (Tex. Crim.
App. 2004). 
5. Terry v. Ohio 392 U.S. 1
6. We agree with the court of appeals' determination that the initial identification was consensual
in nature because Appellant did not hesitate to provide deputies with a name and date of birth, albeit
false.