ACCEPTED
13-15-00178-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
6/11/2015 9:03:55 AM
CECILE FOY GSANGER
CLERK

# #13-15-00178-CR

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
6/11/2015 9:03:55 AM
CECILE FOY GSANGER
Clerk

Thirteenth Court of Appeals, Corpus Christi & Edinburg

**THE STATE OF TEXAS**,

Appellant

v.

**ISMAEL SERDA**,

Appellee

ON STATE'S APPEAL FROM THE 28TH DISTRICT COURT
OF NUECES COUNTY, CAUSE #13-CR-1027-A

# STATE'S BRIEF

A. Cliff Gordon
Tex. Bar #00793838
Asst. Dist. Atty., 105th Dist.
Nueces County Courthouse
901 Leopard St., Rm. 206
Corpus Christi, TX 78401
361.888.0410 phone
361.888.0399 fax
cliff.gordon@nuecesco.com

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

**Appellant:** The State of Texas, District Attorney for the 105th Judicial District, represented by

Appellate counsel:

> A. Cliff Gordon, Asst. Dist. Atty.
> Nueces County Courthouse
> 901 Leopard St., Rm. 206
> Corpus Christi, TX 78401

Trial and appellate counsel:

> Mark Skurka, District Attorney
> Chris Morrell, Asst. Dist. Atty.
> Nueces County Courthouse
> 901 Leopard St., Rm. 206
> Corpus Christi, TX 78401

**Appellee:** Ismael Serda, represented by

Appellate Counsel:

> Travis W. Berry
> P.O. Box 6333
> Corpus Christi, TX 78401

Trial Counsel:

> Kenneth G. Botary
> 615 Leopard St. Ste. 836
> Corpus Christi, TX 78401

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ ii

INDEX OF AUTHORITIES ............................................................................ v

STATEMENT OF THE CASE ......................................................................... vii

ISSUE PRESENTED ...................................................................................... viii

    Whether the trial court erred by granting Serda's motion to suppress evidence ........................................................................... viii

    A. Did the trial court properly conclude that reasonable suspicion was lacking in the face of the unanimous, uncontroverted evidence that Serda was speeding while being followed by Texas DPS Agent Eric Walters ...................... viii

    B. Did Serda's explanation for his admitted speeding negate reasonable suspicion? ............................................................. viii

    C. Was reasonable suspicion even necessary in light of the trial court's finding that Serda did not realize he was being pursued by law enforcement when he brought his vehicle to a stop? ............................................................................... viii

STATEMENT OF FACTS ............................................................................... 1

    The traffic encounter and felony DWI charge ............................................. 1

    Serda admitted in his motion to suppress that he was speeding .............. 1

    Serda testified that he was speeding while being followed by Texas DPS Agent Walters, and Serda's trial counsel argued Serda was speeding .............................................................................. 1

    The trial court found no reasonable suspicion to stop Serda, granted his motion to suppress, and refused to make any findings on his admitted speeding ....................................................... 2

SUMMARY OF THE ARGUMENT ................................................................ 3

ARGUMENT .................................................................................................. 5

iii

The trial court erred by granting Defendant Serda's motion to suppress.................................................................................................5

1. The trial court found no reasonable suspicion by disregarding the collective knowledge of the cooperating officers .................................................................................................5

   1.a General Legal Standards ...............................................................5

   1.b The legal standards applicable to reasonable suspicion should have required the trial court to consider the collective knowledge of the cooperating officers .....................8

   1.b The undisputed evidence showed that the cooperating officers had reason to suspect that Serda was speeding ..........8

2. The trial court wrongly found no reasonable suspicion by weighing the relative innocence or guilt of Serda's conduct.......10

   2.a The legal standards should have required the trial court to examine only the relative degree of suspicion arising from Serda's conduct through the prism of the reasonable officer........................................................................11

   2.b The trial court, in effect, found a "paranoid speeding drunk" defense to reasonable suspicion ..................................12

3. The trial court's findings show that the traffic stop was a consensual encounter requiring no reasonable suspicion ...........13

   3.a The legal standards recognize that some police-citizen encounters need not be supported by reasonable suspicion or probable cause........................................................13

   3.b No detention occurs when a person pulls over without believing he is yielding to a law enforcement officer.............15

PRAYER...................................................................................................................15

CERTIFICATE OF COMPLIANCE ...................................................................16

CERTIFICATE OF SERVICE .............................................................................16

iv

# INDEX OF AUTHORITIES

**Cases**

Allen v. State, 13-13-00188-CR, 2014 WL 4402135 (Tex. App.—Corpus
Christi Sept. 4, 2014, no pet.) ...................................................................14

Berkemer v. McCarty, 468 U.S. 420 (1984)...............................................6

Bland v. Texas Dep't of Pub. Safety, No. 14-12-01057-CV, 2013 WL
3868447, (Tex. App.—Houston [14th Dist.] July 23, 2013, pet
denied)................................................................................................12

Derichsweiler v. State, 348 S.W.3d 906 (Tex. Crim. App. 2011)...... 6, 9, 11, 12

Drago v. State, 553 S.W.2d 375 (Tex. Crim. App. 1977)....................................7

Fonseca v. State, 881 S.W.2d 144 (Tex. App.—Corpus Christi 1994, no
pet.) ....................................................................................................8

Granados v. State, 85 S.W.3d 217 (Tex. Crim. App. 2002) ................................7

Hoag v. State, 728 S.W.2d 375 (Tex. Crim. App. 1987) ................................8, 9

In re J.M., 995 S.W.2d 838 (Tex. App.—Austin 1999, no pet.) ........................11

Martinez v. State, 348 S.W.3d 919 (Tex. Crim. App. 2011)...............................8

McVickers v. State, 874 S.W.2d 682 (Tex. Crim. App. 1993)........................7, 9

Power v. State, No. 13-05-693-CR, 2006 WL 2516525 (Tex. App.—
Corpus Christi July 27, 2006, no pet.) .......................................................7

Praska v. State, 557 S.W.2d 83 (Tex. Crim. App. 1977)............................ 11, 12

Scardino v. State, 294 S.W.3d 401 (Tex. App.—Corpus Christi 2009, no
pet.) ....................................................................................................6

State v. Kelly, 204 S.W.3d 808 (Tex. Crim. App. 2006) ....................................6

State v. Kerwick, 393 S.W.3d 270 (Tex. Crim. App. 2013)................................6

Texas Dep't of Pub. Safety v. Celedon, No. 13-01-557-CV, 2002 WL
34230967 (Tex. App.—Corpus Christi Aug. 29, 2002, no pet.)...............8

United States v. Mendenhall, 446 U.S. 544 (1980) .............................................14

Valencia v. State, 820 S.W.2d 397 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) ..................................................................................7

Wade v. State, 422 S.W.3d 661 (Tex. Crim. App. 2013) ........................... 14, 15

Woods v. State, 956 S.W.2d 33 (Tex. Crim. App. 1997) ...................................11

# STATEMENT OF THE CASE

| | |
|---|---|
| Nature of the Case | A grand jury indicted Defendant Ismael Serda for felony Driving While Intoxicated.  CR 5. |
| Course of Proceedings | On February 25, 2015, Serda filed his Motion to Suppress Evidence.  CR 30-32.  On March 4, the trial court heard Serda's motion to suppress. RR 2:1. |
| Trial Court's Disposition | On March 5, 2015, the trial court granted Serda's motion to suppress.  CR 34. |

# ISSUE PRESENTED

Whether the trial court erred by granting Serda's motion to suppress evidence.

A. Did the trial court properly conclude that reasonable suspicion was lacking in the face of the unanimous, uncontroverted evidence that Serda was speeding while being followed by Texas DPS Agent Eric Walters?

B. Did Serda's explanation for his admitted speeding negate reasonable suspicion?

C. Was reasonable suspicion even necessary in light of the trial court's finding that Serda did not realize he was being pursued by law enforcement when he brought his vehicle to a stop?

## STATEMENT OF FACTS

**The traffic encounter and felony DWI charge.**

Corpus Christi Police Department Officer Alexandria Castro was on patrol when she received a dispatch to assist DPS Narcotics Agent Eric Walters, who was in an unmarked pickup truck following Defendant Serda. Supp. CR 17 (Findings ##1, 2). The ensuing traffic encounter led to Serda's arrest and grand jury indictment for felony Driving While Intoxicated. CR 5.

**Serda admitted in his motion to suppress that he was speeding.**

On February 25, 2015, Serda filed his Motion to Suppress Evidence. CR 30-32. The motion, while admitting Serda reached speeds of "80-100 miles per hour," claimed that he thought he needed to evade another driver who appeared to be "in a state of road rage." CR 30.

**Serda testified that he was speeding while being followed by Texas DPS Agent Walters, and Serda's trial counsel argued Serda was speeding.**

On March 4, 2015, the trial court heard Serda's motion to suppress. RR 2:1. At the suppression hearing, Serda limited his challenge to the existence of reasonable suspicion for the traffic stop that led to his DWI

1

arrest.  RR 2:52.  Serda testified that he was speeding while DPS Agent Walters pursued him—

> [Prosecutor] . . . Is it a fair statement to say that you were speeding to try to get away from the vehicle that way following you?
> [Serda]:     Entirely.
> Q:            Okay.  So you are speeding?
> A:            To try to get away from the vehicle that was chasing me.

RR 2:45-46.  Serda's trial counsel agreed that "[Serda] was speeding to try to avoid contact with whoever was chasing him because he was afraid." RR 2:49.

Also at the hearing, Officer Castro testified that she was dispatched to try intercept Walters and Serda's vehicles because Serda was suspected of speeding, being intoxicated, and driving recklessly.  RR 2:6, 12, 35-36.

**The trial court found no reasonable suspicion to stop Serda, granted his motion to suppress, and refused to make any findings on his admitted speeding.**

On March 5, 2015, the trial court granted Serda's motion to suppress. CR 34.  Upon the State's timely request (CR 30), the trial judge entered findings of fact and conclusions of law (Supp. CR 17).  The trial court based its conclusion of no reasonable suspicion on its finding that Officer Castro

2

never witnessed Serda commit any traffic violations. Supp. CR 17-18 (Findings ##8, 9; Conclusion #2).

Officer Castro could not observe Serda's driving before he pulled over because Serda did so before Officer Castro could catch up to and get behind his vehicle. Supp. CR 17 (Finding #7). Because Officer Castro had not yet caught up to Serda, he did not realize that he was being followed by any law enforcement authorities when he stopped his vehicle. Supp. CR 17 (Finding #3).

The State requested additional findings concerning Serda's testimony that he was speeding and what Officer Castro heard from dispatch. Supp. CR 19. The trial court refused on the basis that DPS Agent Walters did not testify at the hearing. Supp. CR 25. This Court denied the State's motion to abate and remand for additional findings.

## SUMMARY OF THE ARGUMENT

Reasonable suspicion depends on the knowledge of the cooperating officers—here—DPS Agent Walters, Officer Castro, and the police dispatcher. It is undisputed that Serda was speeding while being followed

3

by DPS Agent Walters in an unmarked vehicle and that CCPD Officer Castro was dispatched to help him stop Serda. This evidence is undisputed because Serda admitted it in his motion to suppress and on the stand during the suppression hearing, and Officer Castro testified that she was dispatched to assist DPS Agent Walters due to, among other reasons, speeding by Serda. The trial court's legal conclusion that reasonable suspicion was lacking because Officer Castro did not witness Serda's speeding is wrong and should be reversed by this Court.

Furthermore, Serda's motion to suppress admitted that he was speeding yet sought suppression because he mistakenly thought he was being chased by an unknown driver instead of DPS Agent Walters. However, Serda's subjective thoughts are not part of the reasonable suspicion analysis. That is because reasonable suspicion depends on the degree of suspicion that attaches to the circumstances facing the officers— not the relative guilt or innocence of those circumstances. Thus, regardless why he was speeding, Serda's admitted speeding over several miles while

4

being followed by DPS Agent Walters provided reasonable suspicion to stop him.

Finally, the trial court made no findings concerning which law enforcement officer supposedly stopped Serda. It could not because the trial judge found that Serda brought his vehicle to a stop before he knew that law enforcement was pursuing him. Thus, Serda did not stop due to any show of authority. As a result, his initial encounter with police was consensual and need not have been supported by reasonable suspicion. Thus, had reasonable suspicion been lacking, the trial court's granting of Serda's motion to suppress would still be wrong and deserving of reversal.

## ARGUMENT

**The trial court erred by granting Defendant Serda's motion to suppress.**

**1. The trial court found no reasonable suspicion by disregarding the collective knowledge of the cooperating officers.**

**1.a General Legal Standards**

In reviewing a trial court's ruling on a motion to suppress, appellate courts employ a bifurcated standard, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact

that rely upon the credibility of a witness, but applying a *de novo* standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *E.g., State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). "Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of law that is reviewed *de novo* on appeal." *Kerwick*, 393 S.W.3d at 273.

"A warrantless automobile stop is a Fourth Amendment seizure analogous to a temporary detention, and it must be justified by reasonable suspicion." *Scardino v. State,* 294 S.W.3d 401, 405 (Tex. App.—Corpus Christi 2009, no pet.) (citing *Berkemer v. McCarty,* 468 U.S. 420, 439 (1984)). A police officer has reasonable suspicion for a detention if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that the person

detained is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State,* 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This standard is an objective one that disregards the subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention. *Ibid.*

It is generally accepted that law enforcement officers may lawfully stop a motorist who commits a traffic violation. *McVickers v. State,* 874 S.W.2d 682, 664 (Tex. Crim. App. 1993), *superseded by statute on other grounds as stated in Granados v. State,* 85 S.W.3d 217, 227-30 (Tex. Crim. App. 2002); *see also Power v. State,* No. 13-05-693-CR, 2006 WL 2516525, at *2 (Tex. App.—Corpus Christi July 27, 2006, no pet.) (citing *McVickers*; not designated for publication). In stopping vehicles for an investigative detention based on a traffic violation, the State need not prove that the detainee actually committed a traffic violation. *Drago v. State,* 553 S.W.2d 375, 377 (Tex. Crim. App. 1977). Reasonable suspicion to believe that a violation occurred or is occurring will suffice. *Ibid.*; *Valencia v. State,* 820 S.W.2d 397, 400 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd); *see also*

*Texas Dep't of Pub. Safety v. Celedon*, No. 13-01-557-CV, 2002 WL 34230967, at \*3 (Tex. App.—Corpus Christi Aug. 29, 2002, no pet.) (citing *Valencia*; not designated for publication).

**1.b  The legal standards applicable to reasonable suspicion should have required the trial court to consider the collective knowledge of the cooperating officers.**

When officers cooperate, a court must consider their cumulative information in determining whether reasonable suspicion exists at the time of the stop.  *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987), *cited with approval in Fonseca v. State*, 881 S.W.2d 144, 150 (Tex. App.—Corpus Christi 1994, no pet.).  A police dispatcher is considered a cooperating officer.  *Martinez v. State*, 348 S.W.3d 919, 924 (Tex. Crim. App. 2011) (construing *Derichsweiler*).

**1.b  The undisputed evidence showed that the cooperating officers had reason to suspect that Serda was speeding.**

The trial court based its ruling on the fact that Officer Castro, who was dispatched to help DPS Agent Walters stop Serda, did not see Serda commit any traffic violations.  Supp. CR 17-18 (Findings ##7, 8; Conclusion

8

#2). However, the undisputed evidence before the trial court[1] showed that Serda was speeding when being followed by DPS Agent Walters—

> ➢ Serda's motion to suppress admitted he drove 80-100 miles per hour while being followed by DPS Agent Walters. CR 30.

> ➢ Serda testified at the suppression hearing that he was speeding over a distance of about 10 miles in an attempt to discern whether the vehicle driven by DPS Agent Walters was following him and to evade it. RR 2:40-41, 45-46.

> ➢ Serda's counsel argued that he was speeding to evade Walters's vehicle. RR 2:49.

> ➢ Officer Castro testified that she was dispatched to help DPS Agent Walters stop Castro for, among other reasons, speeding. RR 2:6.

The unanimous, uncontroverted evidence that Serda was speeding over several miles while being followed by DPS Agent Walters—relayed to dispatch and Officer Castro—provided reasonable suspicion to stop Serda. *McVickers*, 874 S.W.2d at 664; *Hoag*, 728 S.W.2d at 380; *Derichsweiler*, 348 S.W.3d at 914-15.[2]

---

[1] Even before this Court, Serda continues to admit his speeding. Appellee's Objection to State's Motion to Abate and Remand at 1 ("[DPS Narcotics Agent Walters] chased appellee at very high speeds . . . .").

[2] The State acknowledges, as it stated above concerning the general legal standards, that a trial court's findings of historical fact are entitled to almost total

9

**2.     The trial court wrongly found no reasonable suspicion by weighing the relative innocence or guilt of Serda's conduct.**

Serda boldly challenged reasonable suspicion to stop him while admitting that he was speeding.  CR 30; RR 2:40-41, 45-46.  He premised that position on the theory that his speeding was "innocent" because he thought he was being chased by an unknown driver. RR 2:51 ("My client said he was trying to avoid contact with someone that was chasing him, and I think he was driving at a reasonable speed . . . to do just that."); *but see* RR 2:41-42 (admitting he could think of no reason that someone would chase him).

---

deference.  Here, however, the trial court made no findings on Serda's speeding and the reason for Officer Castro's dispatch (which included speeding).  Thus, the trial court presumably felt that Serda's speeding in DPS Agent Walters's presence was irrelevant to its ruling, which is an erroneous legal conclusion under *McVickers* and *Hoag*.

Further, had he trial court found that Serda was not speeding, it would have exceeded the deference that it enjoys when finding historical facts.  Not only was the evidence uncontroverted and unanimous, Serda's speeding was an integral part of his story that he thought he had to break the law to determine whether he was being followed and then to evade the pursuing driver.  RR 2:40-41, 45-46.  The trial court believed the story (Supp. CR 17 [Findings ##3, 4], 25) and would have had no basis to reject the essential subpart that Serda exceeded the speed limit when being followed by DPS Agent Walters.

10

**2.a** **The legal standards should have required the trial court to examine only the relative degree of suspicion arising from Serda's conduct through the prism of the reasonable officer.**

Reasonable suspicion depends on whether the articulable facts would lead a reasonable officer to conclude that a person is, has been, or soon will be engaged in criminal activity. *E.g., Derichsweiler*, 348 S.W.3d at 914. "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Id*. (quoting *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)). A defense to a traffic infraction does not negate reasonable suspicion to detain arising from the infraction. *Praska v. State*, 557 S.W.2d 83, 85-86 (Tex. Crim. App. 1977) ("The fact that appellant may have used a hand signal which Officer Alexander could not see from his vantage point is certainly a defense to the charge that he committed the traffic offense, but it just as certainly would not negate the officer's justification for stopping appellant's vehicle in the first place."); *see also In re J.M.*, 995 S.W.2d 838, 843 n.7 (Tex. App.—Austin 1999, no pet.) ("The fact that an

arrestee may offer exculpatory evidence to an officer that may later support a defense to criminal activity does not eliminate probable cause to arrest.").

### 2.b The trial court, in effect, found a "paranoid speeding drunk" defense to reasonable suspicion.

Serda's motion to suppress presented the issue of justifying his admitted speeding based on his paranoia of being chased by an unknown driver. But what Serda subjectively believed is not part of a reasonable suspicion analysis because (1) a suspect's thoughts are unknown to the officer; and (2) whether a suspect has a defense to speeding does not negate reasonable suspicion arising from speeding itself. *Derichsweiler*, 348 S.W.3d at 914; *Praska*, 557 S.W.2d at 85-86; *see also Bland v. Texas Dep't of Pub. Safety*, No. 14-12-01057-CV, 2013 WL 3868447, at *4 (Tex. App.—Houston [14th Dist.] July 23, 2013, pet denied) ("Even if a fact finder later might determine that Bland's speed was reasonable and prudent, that Bland was exceeding the posted speed limit supports the officer's reasonable suspicion that Bland had committed a traffic violation."; not designated for publication). Thus, regardless whether the trial judge thought that a paranoid drunk

might be justified in speeding away from an officer in an unmarked vehicle, that speeding provides reasonable suspicion to stop him.

**3.    The trial court's findings show that the traffic stop was a consensual encounter requiring no reasonable suspicion.**

The trial court found—

> Before Defendant brought his vehicle to a stop, Defendant did not know that he was being followed by any police officers or agents or any authorities; he thought he was being chased by an unknown person.

Supp. CR 17 (Finding #3).

**3.a    The legal standards recognize that some police-citizen encounters need not be supported by reasonable suspicion or probable cause.**

There are three types of legally-recognized police citizen interactions—

> (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause. Police officers are as free as any other citizen to approach citizens to ask for information or cooperation. Such consensual encounters may be uncomfortable for a citizen, but they are not Fourth Amendment seizures.

13

*Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013) (footnotes omitted); *see also Allen v. State*, 13-13-00188-CR, 2014 WL 4402135, at *2-4 (Tex. App.—Corpus Christi Sept. 4, 2014, no pet.) (discussing *Wade*; not designated for publication).

No bright-line rule governs when a consensual encounter becomes a detention. *Wade*, at 667. Similar to probable cause, courts must take into account "the totality of the circumstances of the interaction to decide whether a reasonable person would have felt free to ignore the police officer's request or terminate the consensual encounter." *Ibid*. This is the *Mendenhall* test. *Id*. at 667-68 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). If ignoring the request or terminating the encounter is an option, then no Fourth Amendment seizure has occurred. *Wade*, at 668. But, if an officer through force or a show of authority succeeds in restraining a citizen in his liberty, the encounter is no longer consensual; it is a Fourth Amendment detention or arrest, subject to Fourth Amendment scrutiny. *Ibid*. The question of whether the particular facts show that a

14

consensual encounter has evolved into a detention is a legal issue that is reviewed *de novo. Ibid*.

### 3.b No detention occurs when a person pulls over without believing he is yielding to a law enforcement officer.

A reasonable driver who believes he is being followed by a fellow citizen on the highway would not feel burdened by any decision as to whether to heed a police officer's request and would feel free to continue on his way. *Wade*, 422 S.W.3d at 667-68. That Serda—enjoying "a pretty high BAC" (RR 2:20-21) and stopping to "get into a fight with somebody" (RR 2:42)—might have felt otherwise does not affect the analysis. Thus, Serda's initial encounter with police was consensual and need not have been supported by reasonable suspicion. *Wade*, at 667.

### PRAYER

For these reasons, the State requests that the Court reverse the trial court order granting Serda's motion to suppress, remand for further proceedings, and grant the State all other proper relief.

15

Respectfully Submitted,

/s/ A. Cliff Gordon
A. Cliff Gordon
Tex. Bar #00793838
Asst. Dist. Atty., 105th Dist.
Nueces County Courthouse
901 Leopard St., Rm. 206
Corpus Christi, TX 78401
361.888.0410 phone
361.888.0399 fax
cliff.gordon@nuecesco.com

## CERTIFICATE OF COMPLIANCE

According to the word count of the computer program used to prepare this document, it contains 4,000 words.

## CERTIFICATE OF SERVICE

On June 11, 2015, a true copy of the foregoing was served via eServe on the following:

Mr. Travis W. Berry
P.O. Box 6333
Corpus Christi, TX 78401
via email: travisberrylaw@gmail.com
Appellate Counsel for Appellee

/s/ A. Cliff Gordon
A. Cliff Gordon

16